# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHERI MINARSKY,

    Plaintiff,

v.                       3:14-CV-02021
                         (JUDGE MARIANI)

SUSQUEHANNA COUNTY and
THOMAS YADLOSKY,

    Defendants.

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

The Plaintiff, Sheri Minarsky, initiated the above-captioned matter against Defendants Susquehanna County ("County") and Thomas Yadlosky by filing a Complaint (Doc. 1) on October 21, 2014. She later filed a First Amended Complaint (Doc. 7) on November 11, 2014 and a Second Amended Complaint (Doc. 16) on December 18, 2014. The Second Amended Complaint alleges the following counts against the County: gender discrimination (Count I), sexual harassment-hostile work environment (Count II), and sexual harassment-quid pro quo (Count III) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*; gender discrimination in violation of the Pennsylvania Human Relations Act (Count IV); and a state law tort claim for negligent hiring and retention (Count VII). The Second Amended Complaint alleges the following counts against Defendant Yadlosky: gender discrimination in violation of the Pennsylvania Human Relations Act (Count IV); a state law tort claim for intentional infliction of emotional distress

(Count V); and a state law tort claim for assault (Count VI). Prior to filing this lawsuit, the Plaintiff received a Dismissal and Notice of Rights from the Equal Employment Opportunity Commission ("EEOC") and Plaintiff initiated the present action within 90 days of receipt. (Amended Compl., Doc. 16 at ¶¶18-19; County's Answer, Doc. 19 at ¶¶18-19.)

Presently before the Court is the County's Motion for Judgment on the Pleadings (Doc. 25). The parties have briefed the motion, and it is ripe for decision. For the reasons set forth below, the Court will deny the County's Motion.

## II. FACTUAL BACKGROUND

Plaintiff's Second Amended Complaint alleges that shortly after her hire in 2009 and until July 2013 she experienced unwanted sexual advances and attention from Defendant Yadlosky while both were in the employ of the County. A review of Plaintiff's Second Amended Complaint and the County's Answer reveals that there are factual disputes between Plaintiff and the County about what occurred during this time period. Given this, and given that the County has filed a Motion for Judgment on the Pleadings, which is analyzed under the same standard as a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), see Part III infra, the Court will set forth separately the facts that the parties agree on and the facts that they dispute.

### A. Facts Alleged by Plaintiff Which Have Been Admitted by Defendant

The following is a statement of the averments of the Plaintiff's Second Amended Complaint (Doc. 16) which have been admitted by the County in its Answer (Doc. 19):

In or around September 2009, the County hired the Plaintiff, an adult female, in the position of Secretary of Veterans Affairs at the County Office Building located in Montrose, Pa. (Doc. 16 at ¶¶2, 23; Doc. 19 at ¶¶2, 23). As a female, Plaintiff is a member of a protected class. (*Id.* at ¶91). Plaintiff was qualified to perform the job for which she was hired. (*Id.* at ¶92).

At the time of Plaintiff's hire, Defendant Yadlosky was her direct supervisor. (*Id.* at ¶24).

On July 10, 2013, Plaintiff emailed Defendant Yadlosky regarding his unwanted touching. (*Id.* at ¶47). In the email, Plaintiff wrote, "I want to just let you know how uncomfortable I am when you hug, touch and kiss me. I don't think this is appropriate at work, and I don't want to go to Sylvia. I would rather resolve this ourselves." (*Id.* at ¶48).

On or about July 11, 2013, a female department head complained on behalf of Plaintiff that Defendant Yadlosky was sexually harassing Plaintiff. (Doc. 16 at ¶63; Doc. 19 at ¶63). On or about July 18, 2013, the County terminated Defendant Yadlosky. (*Id.* at ¶64).

### B. Plaintiff's Allegations and the Parties' Disputes of Fact

Plaintiff alleges that she applied for and accepted a job with the County to pay for her minor daughter's medical bills, (Doc. 16 at ¶25), and that Defendant Yadlosky became aware of her vulnerable financial position and that she needed the job in order to provide

continuing medical care for her daughter, (*id.* at ¶26). The County responds that it is without knowledge of these averments. (Doc. 19 at ¶¶25-26).

Plaintiff further alleges that Defendant Yadlosky used her financial position to sexually harass her without fear of her reporting his actions. (Doc. 16 at ¶27). According to Plaintiff, these unwanted sexual advances began approximately four to five weeks after she was hired. (*Id.* at ¶28). Plaintiff alleges that Defendant Yadlosky repeatedly tried to kiss her on the mouth when she worked with him, (*id.* at ¶29), and that he also constantly tried to touch and hug her without her permission, (*id.* at ¶30). Plaintiff refused Defendant Yadlosky's physical advances each time. (*Id.* at ¶31). The County responds that it is without knowledge of these averments. (Doc. 19 at ¶¶27-31).

Plaintiff also alleges that Defendant Yadlosky brought mistletoe to the office around Christmas time each year, (Doc. 16 at ¶32), and that he asked her and other females in the office to kiss him under the mistletoe, (*id.* at ¶33). In or around the end of December 2012, Defendant Yadlosky again brought mistletoe to the office and repeatedly asked Plaintiff to kiss him under it. (*Id.* at ¶34). At all times, Plaintiff refused his unwanted sexual advances. (*Id.* at ¶36). The County responds that it is without knowledge of these averments. (Doc. 19 at ¶¶32-36).

Plaintiff alleges that Defendant Yadlosky's sexual advances made her embarrassed and uncomfortable. (Doc. 16 at ¶37). The County responds that it is without knowledge of this averment. (Doc. 19 at ¶37).

Plaintiff also alleges that Defendant Yadlosky also sent emails of a sexually explicit nature from his work account to Plaintiff's work account. (Doc. 16 at ¶38). Plaintiff did not respond to these emails. (*Id.* at ¶39). The County responds that it is without knowledge of these averments. (Doc. 19 at ¶¶38-39).

Plaintiff alleges that on Plaintiff's days off, Tuesdays and Thursdays, Defendant Yadlosky consistently called Plaintiff at her home. (Doc. 16 at ¶40). He began calling her at her home in or around October 2009 and continued to call her at her personal residence until at least May 2013. (*Id.* at ¶41). Plaintiff alleges that although Defendant Yadlosky often pretended that the purpose of the calls was work-related, he questioned her about non-work-related topics, including, but not limited to, what she was doing and whether she has been sleeping. (*Id.* at ¶42). Plaintiff alleges that if she avoided the calls or did not answer them, Defendant Yadlosky became hostile when she returned to work the next day. (*Id.* at ¶43). Defendant Yadlosky interrogated Plaintiff about why she did not speak with him when he called her home. (*Id.* at ¶44). The County responds that it is without knowledge of these averments. (Doc. 19 at ¶¶40-44).

Plaintiff also alleges that Defendant Yadlosky began "acting possessive" towards her at the office. (Doc. 16 at ¶45). According to Plaintiff, any time she left for lunch, Defendant Yadlosky questioned her as to where she was going for lunch and with whom she was eating. (*Id.* at ¶46). The County responds that it is without knowledge of these averments. (Doc. 19 at ¶¶45-46).

Plaintiff alleges that in response to her July 10, 2013 email to Defendant Yadlosky, *see supra* Part II(A), Defendant Yadlosky responded that he was affectionate toward those people with whom he was close. (Doc. 16 at ¶49). The County admits that Defendant Yadlosky responded with an email; the County attached what it asserts is the email response to its Answer. (Doc. 19 at ¶49; *see also* Doc. 19, Ex. 1 at 2). Plaintiff also alleges that on the following day, Defendant Yadlosky confronted her in person regarding the email she had sent him. (Doc. 16 at ¶50). The County responds that it is without knowledge of this averment. (Doc. 19 at ¶50).

According to Plaintiff, other females previously reported that Defendant Yadlosky hugged or kissed them without their permission, but the County did not investigate or address Defendant Yadlosky's behavior. (*Id.* at ¶52). The County denies this averment and responds that "[o]n each occasion where it was reported or observed that [Defendant] Yadlosky had hugged or kissed a female employee[,] the County investigated and when the behavior was confirmed they issued warnings to [him]." (Doc. 19 at ¶52). Plaintiff alleges, and the County admits, that the County did not terminate Defendant Yadlosky immediately, (Doc. 16 at ¶53; Doc. 19 at ¶53), or issue him any written discipline, (*id.* at ¶¶56, 60), and only issued him two verbal warnings for previous incidents, (*id.* at ¶54). Plaintiff alleges that the County was aware of Defendant Yadlosky's sexual harassment of Plaintiff and the other females in the office. (Doc. 16 at ¶51). The County denies this averment "as stated," responding that it was aware of two discreet [*sic*] incidents" in 2009 and the end of 2011 or

early 2012, that Chief Clerk Sylvia Beamer gave Defendant Yadlosky verbal warnings on both occasions, and that the County "was under the impression and belief that [Defendant] Yadlosky had heeded the warning because [the County] received no complaints . . . until the report concerning his actions towards Plaintiff." (Doc. 19 at ¶51).

Plaintiff alleges that the County's original verbal warning to Defendant Yadlosky was made "in or around March/April 2010," (Doc. 16 at ¶55), while the County contends that the initial warning was issued to Defendant Yadlosky in 2009, (Doc. 19 at ¶55). Plaintiff alleges that the County also verbally warned Defendant Yadlosky to stop sexually harassing female employees in or around July 2012. (Doc. 16 at ¶59). The County denies this averment and responds that the second and final verbal warning was issued to Defendant Yadlosky at the end of 2011 or the beginning of 2012. (Doc. 19 at ¶59).

Plaintiff alleges that "[a]t the time of [Defendant] Yadlosky's termination, the County was aware that [he] was sexually harassing employees for over three (3) years." (Doc. 16 at ¶65). The County denies this averment, responding that it "had no notice that [Defendant] Yadlosky had been harassing female employees for any period of time prior to July 11, 2013, primarily because, Plaintiff had never reported any occurrence of harassment in accordance with the Susquehanna County Sexual Harassment Policy." (Doc. 19 at ¶65).

### III. STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Under Federal Rule of Civil

Procedure 12, judgment on the pleadings is only appropriate in favor of the moving party when that party "clearly establishes that no material issue of fact remains to be resolved" such that the party is "entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (internal quotation omitted). When reviewing a motion for judgment on the pleadings, a court must view the facts in the plaintiff's complaint as true and draw all reasonable inferences in the plaintiff's favor. *Allah v. Al–Hafeez*, 226 F.3d 247, 249 (3d Cir. 2000); *Snyder v. Daugherty*, 899 F. Supp. 2d 391, 396 (W.D. Pa. 2012). In other words, a district court applies the same standard to a judgment on the pleadings as a motion to dismiss pursuant to Rule 12(b)(6), but may also review the answer and instruments attached to the pleadings. *Brautigam v. Fraley*, 684 F. Supp. 2d 589, 591–92 (M.D. Pa. 2010).

## IV. ANALYSIS

In its Motion for Judgment on the Pleadings, the County argues that it is entitled to judgment in its favor at this early stage of litigation because it (1) "exercised reasonable care to prevent and correct any sexually harassing behavior" and (2) "the Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by the [County]." (Brief in Support, Doc. 26 at 5). Thus, the County bases its Motion on the *Faragher-Ellerth* affirmative defense[1] to the imputation of vicarious liability for Title VII sexual harassment violations. In the companion cases of *Faragher v. City of Boca*

---

[1] *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

8

*Raton* and *Burlington Industries v. Ellerth*, the United States Supreme Court laid out two distinct methods for determining whether an employer is vicariously liable for sexual harassment of any employee by her supervisor under Title VII. If the harassment "culminates in a tangible employment action," the employer is strictly liable, but if the harassment "takes place in the absence of a tangible employment action,"[2] the employer may assert the affirmative defense that has come to be known as the *Faragher-Ellerth* defense.[3] *Jones v. Southeastern Pa. Transp. Authority*, 796 F.3d 323, 328 (3d Cir. 2015). Successful application of the defense requires that (1) the employer "exercised reasonable care to avoid harassment and to eliminate it when it might occur" and (2) the complaining employee "failed to act with like reasonable care to take advantage of the employer's safeguards and otherwise to prevent harm that could have been avoided." *Id.* (citing *Faragher*, 524 U.S. at 805).

In arguing that it is entitled to this defense and, thus, judgment on the pleadings, the County assumes as true Plaintiff's averments "that she was sexually harassed on a repeated basis by her supervisor" from shortly after her date of hire until July 2013. (Doc. 26 at 5). From this starting point, the County goes on to state that Plaintiff "admits [she] did not report any of the harassment to any supervisor of Susquehanna County," that "there is no

---

[2] A tangible employment action is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761.

[3] In her Second Amended Complaint, Plaintiff alleges both a hostile work environment sexual harassment cause of action (Count II) and a *quid pro quo* sexual harassment cause of action (Count III). "[T]he labels *quid pro quo* and hostile work environment are not controlling for purposes of establishing employer liability." *Ellerth*, 524 U.S. at 765.

9

dispute" the County had a written anti-sexual harassment policy advising employees on how to report sexual harassment, that the County only learned of Defendant "Yadlosky's alleged behavior on July 11, 2013," and that it thereafter terminated his employment on July 18, 2013. (*Id.* at 5-6). In sum, the County asserts that it did not know about the harassment of which Plaintiff complains until July 2013, that its lack of knowledge was through no fault of its own, and that it acted appropriately as soon as it had knowledge of the harassment.

While the County asserts that "[t]here is virtually no dispute in this case to the relevant facts," a statement with which Plaintiff apparently agrees, (*see* Plaintiff's Brief in Opposition, Doc. 29 at 5), this is belied by the actual condition of the pleadings in this matter. As the Court has already discussed, *supra* Part II(B), there is much that remains uncertain about what occurred within the offices of Susquehanna County government from late 2009 until mid-July 2013. Taking the facts alleged by Plaintiff as true, the Court cannot say as a matter of law that the County "exercised reasonable care to avoid harassment and to eliminate it when it might occur" and that Plaintiff "failed to act with like reasonable care to take advantage of the employer's safeguards and otherwise to prevent harm that could have been avoided." *See Jones*, 796 F.3d at 328. The *Faragher-Ellerth* defense turns on reasonableness and "[r]easonableness is a paradigm question of fact." *Clegg v. Falcon Plastics, Inc.*, 174 Fed. App'x. 18, 26 (3d Cir. 2006). Depending on the nature of the past complaints against Defendant Yadlosky and the nature of the County's interaction with both Plaintiff and Defendant Yadlosky, for instance, a jury could determine that the County did

not act with sufficient care and diligence to avoid further harassment of employees by Defendant Yadlosky. And while "[a] delay in reporting may support a finding that an employee failed to take advantage of safeguards" set up by the County, a plaintiff's "significant delay in reporting the harassment [is] not necessarily unreasonable." *Clegg*, 174 Fed. App'x. at 26 (citing *Cardenas v. Massey*, 269 F.3d 251, 267 (3d Cir. 2001)). Plaintiff's Second Amended Complaint avers sufficient facts, such as the lack of action beyond verbal warnings taken on prior complaints, to raise the inference that Plaintiff's failure to complain was reasonable.

Furthermore, despite the Court's obligation to defer to the well-pleaded allegations in Plaintiff's Second Amended Complaint, the County asks the Court to depart from the standard of review for a 12(c) motion. For instance, the County draws from Plaintiff's statement to Defendant Yadlosky that she "d[id]n't want to go to Sylvia," the County Clerk, about the harassment the inference "that she was fully aware of the [anti-sexual harassment] policy and that she deliberately decided to refrain frm [*sic*] availing herself of it." (Doc. 26 at 6). The Court cannot make this inferential step here, where, as Plaintiff points out, there is no evidence in the record that the anti-sexual harassment policy attached to the Answer was in place during the relevant time period, (*see* Doc. 29 at 7), and where, as discussed above, there are factual disputes as to whether it was reasonable for Plaintiff not to avail herself of such a policy, if it did indeed exist.

In raising a *Faragher-Ellerth* defense, the County has chosen a fact-intensive route on which to attempt to dispose of the case against it. What the County knew, when it knew it, and what it did in response, as well as what Plaintiff did or did not do and why, are key factual elements of the *Faragher-Ellerth* defense. And "[w]here a court grants a Rule 12(b)(6) or Rule 12(c) motion based on an affirmative defense, the facts establishing that defense must: (1) be definitively ascertainable from the complaint and other allowable sources of information, and (2) suffice to establish the affirmative defense with certitude." *Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir. 2008) (internal quotation omitted). Furthermore, "Plaintiffs have no obligation to plead against affirmative defenses." *Asebedo v. Kansas State Univ.*, 559 F. App'x 668, 671-72 (10th Cir. 2014) (stating that, in order to defeat at motion for judgment on the pleadings based on *Faragher-Ellerth*, Plaintiff "was not required to plead any facts regarding reasonableness" of his employer's response to his internal complaints). And finally, Federal Rule of Civil Procedure 7 did not require – and, indeed, prevented – Plaintiff from filing a reply. Understanding these principles of law and recognizing that "[a] court should only grant a motion for judgment on the pleadings if it is clear that the merits of the controversy can be fully and fairly decided in this summary manner," Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1367 (3d ed.), the Court must deny the County's Motion. At this early stage of litigation, the Court cannot say that a *Faragher-Ellerth* defense is definitively ascertainable from or established with certitude by the pleadings in this case.

## VI. CONCLUSION

Based on the foregoing, the County's motion for judgment on the pleadings will be denied in its entirety.

A separate Order follows.

/Robert D. Mariani
United States District Judge