THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHERI MINARSKY,

        Plaintiff,

v.                         3:14-CV-02021
                           (JUDGE MARIANI)

SUSQUEHANNA COUNTY and
THOMAS YADLOSKY,

        Defendants.

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

The Plaintiff, Sheri Minarsky, initiated the above-captioned matter against Defendants Thomas Yadlosky and Susquehanna County ("County") by filing a Complaint (Doc. 1) on October 21, 2014. She later filed a First Amended Complaint (Doc. 7) on November 11, 2014 and a Second Amended Complaint (Doc. 16) on December 18, 2014. The Second Amended Complaint alleges the following counts against Defendant Yadlosky: gender discrimination in violation of the Pennsylvania Human Relations Act (Count IV); a state law tort claim for intentional infliction of emotional distress (Count V); and a state law tort claim for assault (Count VI). The Second Amended Complaint alleges the following counts against the County: gender discrimination (Count I), sexual harassment-hostile work environment (Count II), and sexual harassment-quid pro quo (Count III) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*; gender discrimination in violation of the Pennsylvania Human Relations Act (Count IV); and a state

law tort claim for negligent hiring and retention (Count VII). Prior to filing this lawsuit, the Plaintiff received a Dismissal and Notice of Rights from the Equal Employment Opportunity Commission ("EEOC") and Plaintiff initiated the present action within 90 days of receipt. (Amended Compl., Doc. 16 at ¶¶18-19).

Presently before the Court is Defendant Yadlosky's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 17) under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The parties have fully briefed the motion, and it is ripe for decision. For the reasons set forth below, the Court will grant Defendant Yadlosky's Motion with respect to Count V, deny it as moot with respect to Count IV, and deny it with respect to Count VI.

## II. FACTUAL BACKGROUND

Plaintiff's Second Amended Complaint (Doc. 16) alleges the following facts:

In or around September 2009, the County hired the Plaintiff, an adult female, in the position of Secretary of Veterans Affairs at the County Office Building located in Montrose, Pa. (Doc. 16 at ¶¶2, 23). At the time of Plaintiff's hire, Defendant Yadlosky was her direct supervisor. (*Id.* at ¶24).

Plaintiff alleges that she applied for and accepted a job with the County to pay for her minor daughter's medical bills, (*id.* at ¶25), and that Defendant Yadlosky became aware of her vulnerable financial position and that she needed the job in order to provide continuing medical care for her daughter, (*id.* at ¶26).

2

Plaintiff further alleges that Defendant Yadlosky used her financial position to sexually harass her without fear of her reporting his actions. (*Id.* at ¶27). According to Plaintiff, these unwanted sexual advances began approximately four to five weeks after she was hired. (*Id.* at ¶28). Plaintiff alleges that Defendant Yadlosky repeatedly tried to kiss her on the mouth when she worked with him, (Doc. 16 at ¶29), and that he also constantly tried to touch and hug her without her permission, (*id.* at ¶30). Plaintiff refused Defendant Yadlosky's physical advances each time. (*Id.* at ¶31).

Plaintiff also alleges that Defendant Yadlosky brought mistletoe to the office around Christmas time each year, (*id.* at ¶32), and that he asked her and other females in the office to kiss him under the mistletoe, (*id.* at ¶33). In or around the end of December 2012, Defendant Yadlosky again brought mistletoe to the office and repeatedly asked Plaintiff to kiss him under it. (*Id.* at ¶34). At all times, Plaintiff refused his unwanted sexual advances. (Doc. 16 at ¶36).

Plaintiff alleges that Defendant Yadlosky's sexual advances made her embarrassed and uncomfortable. (*Id.* at ¶37).

Plaintiff also alleges that Defendant Yadlosky sent emails of a sexually explicit nature from his work account to Plaintiff's work account. (*Id.* at ¶38). Plaintiff did not respond to these emails. (*Id.* at ¶39).

Plaintiff alleges that on Plaintiff's days off, Tuesdays and Thursdays, Defendant Yadlosky consistently called Plaintiff at her home. (*Id.* at ¶40). He began calling her at her

home in or around October 2009 and continued to call her at her personal residence until at least May 2013. (*Id.* at ¶41). Plaintiff alleges that although Defendant Yadlosky often pretend that the purpose of the calls was work-related, he questioned her about non-work-related topics, including, but not limited to, what she was doing and whether she has been sleeping. (Doc. 16 at ¶42). Plaintiff alleges that if she avoided the calls or did not answer them, Defendant Yadlosky became hostile when she returned to work the next day. (*Id.* at ¶43). Defendant Yadlosky allegedly interrogated Plaintiff about why she did not speak with him when he called her home. (*Id.* at ¶44).

Plaintiff also alleges that Defendant Yadlosky began "acting possessive" towards her at the office. (*Id.* at ¶45). According to Plaintiff, any time she left for lunch, Defendant Yadlosky questioned her as to where she was going for lunch and with whom she was eating. (*Id.* at ¶46).

On July 10, 2013, Plaintiff emailed Defendant Yadlosky regarding his unwanted touching. (*Id.* at ¶47). In the email, Plaintiff wrote, "I want to just let you know how uncomfortable I am when you hug, touch and kiss me. I don't think this is appropriate at work, and I don't want to go to Sylvia. I would rather resolve this ourselves." (Doc. 16 at ¶48). Plaintiff alleges that Defendant Yadlosky responded that he was affectionate toward those people with whom he was close. (*Id.* at ¶49). Plaintiff also alleges that on the following day, Defendant Yadlosky confronted her in person regarding the email she had sent him. (*Id.* at ¶50). Plaintiff alleges that, on or about July 11, 2013, a female department

4

head complained on behalf of Plaintiff that Defendant Yadlosky was sexually harassing Plaintiff. (*Id.* at ¶63). On or about July 18, 2013, the County terminated Defendant Yadlosky. (*Id.* at ¶64).

According to Plaintiff, other females previously reported to Defendant Susquehanna County that Defendant Yadlosky hugged or kissed them without their permission, (Doc. 16 at ¶52), and the County issued him two verbal warnings, (*id.* at ¶54). Plaintiff alleges that the County's original verbal warning to Defendant Yadlosky was made "in or around March/April 2010," (*id.* at ¶55), and that the County also verbally warned Defendant Yadlosky to stop sexually harassing female employees in or around July 2012, (*id.* at ¶59).

### III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment

6

would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## IV. ANALYSIS

### A. Count IV – Gender Discrimination under the PHRA

Defendant Yadlosky moves to Dismiss Count IV of Plaintiff's Second Amended Complaint on the grounds that Plaintiff's administrative claims were not timely filed with the Pennsylvania Human Relations Commission and that thus her claim under the PHRA must be dismissed. (Doc. 17 at ¶16). In her "Response in Opposition to Defendant Thomas Yadlosky Jr.'s Motion to Dismiss," Plaintiff "agrees to voluntarily withdraw Count IV of the Second Amended Complaint with respect to [Defendant] Yadlosky," but states that she "preserves all rights entitled to her to subsequently amend and/or supplement the pleadings in accordance with Rule 15 of the Federal Rules of Civil Procedure." (Doc. 23 at 2, n.1). The Court construes Plaintiff's statement as a notice of voluntary dismissal under Federal Rule 41(a)(1)(A)(i), which is proper given that Defendant Yadlosky has filed neither an Answer to the Second Amended Complaint, nor a Motion for Summary Judgment. Accordingly, Defendant Yadlosky's Motion to Dismiss is denied as moot with respect to Count IV.

### B. Count V – Intentional Infliction of Emotional Distress

For Plaintiff to state a claim for intentional infliction of emotional distress, she must plead facts sufficient to show that Defendant Yadlosky acted with "intentional outrageous or

7

extreme conduct" which caused her severe emotional distress. *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005). "Outrageous or extreme conduct has been defined by the appellate courts of this Commonwealth as conduct that is so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *Id.* (internal quotation marks omitted). That is,

> it has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.

*Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (internal citations and quotation marks omitted). "With regard to the element of outrageousness, it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Swisher*, 868 A.2d at 1231.

> Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have . . . presented only the most egregious conduct. *See[,] e.g., Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970) (defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents (recognizing but not adopting section 46)); *Banyas v. Lower Bucks Hospital*, 437 A.2d 1236 (Pa. Super. Ct. 1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979) (defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

8

*Hoy*, 720 A.2d at 754. Furthermore, a plaintiff must demonstrate physical injury or harm to sustain a cause of action for intentional infliction of emotional distress. *Fewell v. Besner*, 664 A.2d 577, 582 (Pa. Super. Ct. 1995) (citing *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987) ("Those truly damaged should have little difficulty in procuring reliable testimony as to the nature and extent of their injuries. . . . [A]t the very least, existence of the alleged emotional distress must be supported by competent medical evidence.")); *Crivellaro v. Pennsylvania Power and Light Co.*, 491 A.2d 207 (Pa. Super. Ct. 1985) (finding that symptoms of depression, nightmares, anxiety requiring psychological treatment, and . . . ongoing mental, physical and emotional harm sufficiently stated physical manifestations of emotional suffering to sustain a cause of action).

In her Second Amended Complaint, Plaintiff fails to allege any physical injury or harm, an element necessary to sustain a cause of action for intentional infliction of emotional distress.[1] *See Ghrist v. CBS Broad., Inc.*, 40 F. Supp. 3d 623, 631 (W.D. Pa. 2014) (dismissing Plaintiff's IIED claim where plaintiff "failed to allege the necessary physical harm, coupled with averments of competent medical evidence of such harm, to support such a claim"). Furthermore, while it does not reach the issue, it is not clear to the Court that the factual allegations in Plaintiff's Second Amended Complaint, whether singly or in combination, rise to the requisite level of "outrageous or extreme" conduct, particularly

---

[1] Under her claim for assault, Plaintiff alleges that as a proximate result of Defendant Yadlosky's conduct, "Plaintiff has suffered extreme mental distress, humiliation, anguish, and emotional and physical injuries and economic losses . . . ." (Doc. 16 at ¶111). The Court does not consider this unspecific allegation of "physical injuries" sufficient to carry Plaintiff's burden at the pleading stage.

9

as "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress," *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988), and, "as a general rule, sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress," *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1487 (3d Cir. 1990). The Court thus grants Defendant Yadlosky's Motion to Dismiss with respect to Count V.

### C. Count VI – Assault

The Third Circuit has described the tort of assault in Pennsylvania as follows:

> . . . an act intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery. Words in themselves, no matter how threatening, do not constitute an assault; the actor must be in a position to carry out the threat immediately, and he must take some affirmative action to do so.

*Regan v. Upper Darby Twp.*, 363 Fed. App'x 917, 921 (3d Cir. 2010) (citing *Cucinotti v. Ortmann*, 159 A.2d 216, 217 (Pa. 1960)) (internal quotation omitted). Defendant Yadlosky moves to Dismiss Count VI of Plaintiff's Second Amended Complaint in part because Plaintiff pleads that "Yadlosky caused Plaintiff to be <u>constantly apprehensive</u> that she would be subjected to an intentional invasion of her right to be free from offensive and harmful physical conduct," (Doc. 18 at 6) (emphasis added by the Defendant), and Defendant Yadlosky believes that "Pennsylvania law does not define the tort of assault in this manner," (*id.*). The Court, however, is not concerned with how Plaintiff defines the tort, but rather is

10

concerned with whether or not Plaintiff's factual allegations make out a claim for assault. Taking Plaintiff's well-pleaded facts as true and drawing all reasonable inferences in her favor, the Court finds that Plaintiff has stated a claim of assault against Defendant Yadlosky. Plaintiff alleges that Defendant Yadloksy repeatedly tried to kiss, touch, and hug her without her consent and that these advances were unwanted. Furthermore, Plaintiff alleges that she wrote to Defendant Yadlosky in an email, "I want to just let you know how uncomfortable I am *when you hug, touch and kiss me*," (Doc. 16 at ¶48) (emphasis added), supporting the inference that Defendant Yadlosky not only tried to hug, touch, and kiss her, but actually succeeded in making such contact. Plaintiff has sufficiently plead facts that would allow to her to recover for assault; Defendant Yadlosky's Motion is denied as to Count VI.

## VI. CONCLUSION

Based on the foregoing, Defendant Yadlosky's Motion to Dismiss will be denied in part and granted in part, to wit: Count IV against Defendant Yadlosky is dismissed as moot; Count V is dismissed with prejudice for failure to state a claim, and Count VI is allowed to proceed.

A separate Order follows.

Robert D. Mariani
United States District Judge